IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

WILLIAM MICHAEL LOVERN,
    Plaintiff     *

  v.          *  CIVIL ACTION NO. RWT-05-3273

WARDEN, et al       *
    Defendants

          ***

## MEMORANDUM OPINION

On December 6, 2005, Plaintiff, then incarcerated in the Maryland Division of Correction ("DOC"),[1] filed this 42 U.S.C. § 1983 civil rights action for declaratory and injunctive relief and money damages alleging that Defendants Barthlow, Beckett and Gaines caused his wrongful transfer and placement in segregation, where he was stripped of his personal property, including medications, eyeglasses, and legal and personal papers, in retaliation for pursuing various legal remedies.  He claims that Defendant Ray threatened him with assault and that an unknown officer (possibly Defendant Frissie) stood by and did nothing.  Plaintiff also complains of conditions of confinement and denial of medical care[2] during the twelve days he spent on segregation at the Maryland Correctional Institution at Jessup ("MCI-J"), and argues that he should not have been transferred from pre-release to a medium security prison such as MCI-J.[3]  He claims that Defendant

_____

[1] It appears that Plaintiff was released from incarceration on March 13, 2006.  *See* Paper No. 38, at Exhibit C.

[2] Plaintiff has filed an "Emergency" Motion seeking to strike exhibits relating to his medical records which Defendants submitted with their dispositive motion to rebut Plaintiff's claim of denial of medical care.  Plaintiff further requests that his prison case management records and progress sheets be stricken from evidence.  *See* Paper No. 37.  As Plaintiff put at issue his medical condition and his treatment at the hands of corrections officials before the Court, he cannot now argue that evidence probative of the allegations raised in his Complaint and subsequent pleadings violates his privacy.  The "Emergency" Motion is denied.

[3] Plaintiff also seeks reconsideration of an earlier Order denying default judgment.  *See* Paper No. 32.  Plaintiff's additional arguments notwithstanding, for reasons set forth in the Court's April 23, 2006 Order, the entry of default judgment against Defendants Beckett, Gaines, Frisse and Ray would be improper.  Thus, reconsideration is denied.

Cragway, warden of the Jessup Pre-Release Unit ("JPRU"), and Defendant Rowley, warden of MCI-J, are liable for the actions of their employees, and that Defendant Curran, Maryland's Attorney General, and Defendant Sizer, an official within the Maryland Division of Correction ("DOC"), are liable because they have permitted a constitutionally inadequate disciplinary system to remain in effect. Defendants move to dismiss pursuant to Fed. R. Civ. Proc. 12(b), and alternatively request summary judgment pursuant to Fed. R. Civ. Proc. 56. *See* Paper No. 34. Plaintiff opposes Defendants' dispositive motion and has filed a Motion for Summary Judgment. *See* Paper Nos. 38, 39.

**Facts**

It is undisputed that on October 6, 2005, Plaintiff filed an Administrative Remedy Procedure ("ARP") request to the Warden of JPRU complaining that prison officials were violating the Privacy Act by failure to provide certain disclosures while requiring prisoners to list their social security numbers on various documents provided during prisoner orientation.[4] *See* Paper No. 34, Attachments showing Requests for Administrative Remedy 10/6/05. When the Warden did not promptly respond to the ARP request, Plaintiff on November 28, 2005, sent a "Notice of Litigation" to JPRU Facility Administrator Stephanie Barthlow. *See Id.*, letter attached to Barthlow Affidavit. Barthlow, who indicates she considered the "Notice" as written to be a threatening and disrespectful letter presented in violation of institutional rules, issued Plaintiff a notice of rules violation. On November 29, 2005, as a result of the rules violation notice, Plaintiff was transferred from

---

[4]     Plaintiff's Privacy Act allegations are not before this court in this case.

pre-release and placed on segregation at the medium security MCI-J to await a disciplinary hearing.[5]
Plaintiff was found not guilty of the charged infractions during an adjustment hearing held on
December 7, 2005.  *See* Paper No. 34.  On December 10, 2005, he was placed in general population
at MCI-J, and transferred to Brockbridge Correctional Facility on December 16, 2005.  On February
7, 2006, he was transferred to the Eastern Pre-Release Unit, and released from custody five weeks
later.

### Exhaustion

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, generally requires a
prisoner plaintiff to exhaust administrative remedies before filing suit in federal court.  Title 42
U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under
§ 1983 of this title, or any other Federal law by a prisoner confined in any jail, prison, or other
correctional facility until such administrative remedies as are available are exhausted."

The purpose of the exhaustion requirement of the PLRA is to provide "time and opportunity
to address complaints internally before allowing the initiation of a federal case.  In some instances,
corrective action taken in response to an inmate's grievance might improve prison administration
and satisfy the inmate, thereby obviating the need for litigation." *Porter v. Nussle*, 534 U.S. 516,
525 (2002); *see also Woodford v. Ngo*, 126 S.Ct. 2378, 2382 (2006) (holding that administrative
remedies must be properly exhausted, and exhaustion is mandatory).  Exhaustion of administrative
remedies is, however, not a jurisdictional requirement and need not be alleged by a prisoner in his

---

[5]      Plaintiff claims that while there, he filed one or more ARPs concerning his allegedly wrongful
placement on segregation and, presumably, the poor conditions of confinement and his alleged lack of medical care at
MCI-J.  *See* Paper No. 38, Exhibit D, Affidavit at 2.  Plaintiff does not name a single medical care provider in his
Complaint and fails to identify any of the MCI-J correctional officers who allegedly failed to provide him with sick call
slips.  Accordingly, his bald claims of denial of medical care and increased chronic pain due to poor conditions of
confinement will not be addressed here.

complaint. *See Woodford*, 126 S.Ct. at 2392 ("[T]he PLRA exhaustion requirement is not jurisdictional[.]"); *see also Anderson v. XYZ Correctional Health Systems*, 407 F. 3d 674, 677 (4th Cir. 2005). The PLRA "clearly contemplates dismissal on the merits of some claims that have not been exhausted . . . [accordingly], the exhaustion-of-remedies requirement does not operate as a bar to the district court's exercise of its subject-matter jurisdiction." *Id*. (citing 42 U.S.C. § 1997e(c)(2)). Thus, it is not necessary for a plaintiff to allege exhaustion in a complaint in order to state a claim; instead, exhaustion is generally an affirmative defense to be raised by the defendant. *See* Anderson, 407 F.3d at 681.

Here, Defendants have moved to dismiss or for summary judgment in part raising as an affirmative defense Plaintiff's failure to exhaust administrative remedies. Dismissal on the basis of an affirmative defense may be proper "when the face of the complaint clearly reveals the existence of a meritorious affirmative defense." *Brooks v. City of Winston-Salem, North Carolina*, 85 F.3d 178, 181 (4th Cir. 1996); *see* 5B CHARLES ALLAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 3d § 1357, at 714 (2004) ("A complaint showing that the governing statute of limitations has run on the plaintiff's claim for relief is the most common situation in which the affirmative defense appears on the face of the pleading and provides a basis for a motion to dismiss under Rule 12(b)(6)."). Indeed, the Fourth Circuit recognizes that a court may dismiss a complaint for failure to exhaust when it is "apparent from the facts alleged in the complaint." *Anderson*, 407 F.3d at 682. If, however, the facts are not clear from the face of a complaint, the court must examine material outside the pleadings, and the matter is treated as one for summary judgment. *See* Fed.R.Civ.P. 12(b); *Gadsby by Gadsby v. Grasmick*, 109 F.3d 940, 949 (4th Cir. 1997); *Paukstis v. Kenwood Golf & Country Club, Inc.*, 241 F. Supp. 2d 551, 556 (D. Md.

2003).

Plaintiff avers that he filed ARP requests while held on segregation at MCI-J.  *See* Paper No. 38, Exhibit D.  Inasmuch as he was moved from MCI-J to Brockbridge Correctional Facility within two weeks and transferred seven weeks later to the Eastern Pre-Release Unit, the undersigned does not see how Plaintiff could have availed himself of the full breadth of remedies under the ARP.[6] Nonetheless, the Court will address the merits of Plaintiff's Motion for Summary Judgment, along with the Defendants' motion.

## Review on the Merits

At the outset, the Court notes that Plaintiff has not provided a valid affidavit in support of his Opposition, in that his "Declaration" does not indicate that the information contained therein is based on personal knowledge, or that Plaintiff would be competent to testify.  *See* Fed.. R. Civ. Pro. 56(f).  As Plaintiff has filed this action *pro se*, however, the Court will not rest its decision on this failure alone.  *See Haines v. Kerner*, 404 U.S. 519, 520 (1972).

A motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  To avoid summary judgment, the non-moving party "may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.

Retaliation against a prisoner for the exercise of a constitutional right states a claim under 42 U.S.C. § 1983.  *See American Civ. Liberties Union v. Wicomico County*, 999 F. 2d 780, 784-86

---

[6]     Indeed, at least one administrative claim was dismissed at the Inmate Grievance Office ("IGO") level due to Plaintiff's release from custody.  *See* Paper No. 38, Exhibit C.

(4th Cir. 1993).  The prisoner alleging retaliation "[b]ears the burden of showing that the conduct

at issue was constitutionally protected and that the protected conduct was a substantial motivating

fact in the prison official's decision . . . ."  *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996).

"'A complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the

pleading alone.'"  *Gill v. Mooney*, 824 F.2d 192, 194 (2d Cir. 1987) (quoting *Flaherty v. Coughlin*,

713 F.2d 10, 13 (2d Cir. 1983)); *Pierce v. King*, 918 F. Supp. 932, 945 (E.D. N.C. 1996) (holding

that conclusory allegations of retaliation are insufficient to state a claim).

     In this case, Defendant Barthlow asserts that no constitutional violation occurred, but that

even if it did, she is entitled to qualified immunity.  "[Qualified] immunity is intended to allow

public officials to act 'with independence and without fear of consequences' where their actions do

not implicate clearly established rights."  *Turner v. Dammon*, 848 F.2d 440, 443 (4th Cir. 1988).

"[G]overnment officials performing discretionary functions generally are shielded from liability for

civil damages insofar as their conduct does not violate clearly established statutory or constitutional

rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818

(1982).  "[W]hether an official protected by qualified immunity may be held personally liable for

an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the

action[,] assessed in light of the legal rules that were 'clearly established' at the time it was taken.

*Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (citations omitted) (quoting *Harlow*, 457 U.S. at

818-819).

     Plaintiff's letter to Defendant Barthlow is undeniably provocative and contains language that

certainly could be considered by a reasonable person as threatening, including Plaintiff's claim that

he would subject Barthlow to federal criminal prosecution and financial ruin for her alleged

unwillingness to comply with Plaintiff's interpretation of the Privacy Act.[7]  The Court finds that Barthlow's act of charging  Plaintiff with two rules violations involving threats and disrespect[8] was not only permissible under Division of Correction (DOC) Regulation 105-2, but was objectively reasonable.[9]  Barthlow is, therefore, entitled to qualified immunity.  *See Anderson*, 483 U.S. at 639.

Defendants Beckett and Gaines escorted Plaintiff to Barthlow's office.  Plaintiff appears to have named them as party defendants because they failed to insist that Barthlow, the supervisor on their shift, have the adjustment complaint signed off by a shift commander.  Any failure to follow procedure, however, falls on Barthlow, not on the line officers under her supervision.  Similarly, Plaintiff complains that Ray and Frissie should not have transported him to MCI-J to await his disciplinary hearing.  He further states that Ray verbally threatened him during transportation.  *See* Paper No. 38 at 8.  Again, it is unlikely that line officers had the authority to override action taken by a facilities administrator acting as shift supervisor.  Furthermore, mere verbal threats, without more, do not trigger an Eighth Amendment claim of constitutional proportion.  *See Collins v. Cundy*, 603 F.2d 825 (10th Cir. 1979).  Plaintiff has not demonstrated that these line officers were in any way involved in his litigation activities or mentioned in the letter which triggered Barthlow to file a notice of infraction; therefore, Plaintiff's claims against them do not survive summary judgment.

---

[7]      Plaintiff states that Barthlow was "in for a rude awakening" and that he "offered to help [her] because I always give potential defendants <u>one</u> chance to do the right thing.  If they fail, I then use the full force of the law . . . .  You and others have no defense."  (Emphasis in original).  He further noted that "suing [Barthlow] is going to become common place" and that if she wished "to avoid litigation you better talk to me quickly as you're out of time."  Paper No. 34, Notice of Litigation letter.

[8]      The infractions involved the violation of Rule 104 (use of threatening language) and Rule 405 (demonstration of disrespect, insolence or vulgarity).  *See* Paper No. 39, Exhibit 2.

[9]      The Court recognizes that before a prisoner is subject to disciplinary action, the notice of infraction is subject to review by a shift supervisor and approval by a shift commander.  *See* DOC Regulation 105-5.IV.A. 1-4.  While this procedure was apparently not followed in the instant case, the Court does not believe that this failure alone operates to make Barthlow's actions, as a whole, objectively unreasonable, and deprive her of qualified immunity.

*See Anderson*, 477 U.S. at 256.

Plaintiff alleges that JPRU Warden Cragway improperly trained and supervised his employees, resulting in Barthlow effecting his transfer based on a notice of violation that failed to comply with DOC procedures.  *See* Paper No. 39 at 2-3.  The law in the Fourth Circuit is well established that the doctrine of respondeat superior does not apply in claims filed pursuant to 42 U.S.C. § 1983.  *See, e.g., Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 728 (4th Cir. 1999); *See Powell v. Shopco Laurel Co.*, 678 F.2d 504, 506 (4th Cir. 1982); *McIlwain v. Prince William Hospital*, 774 F. Supp. 986, 990 (E.D.Va. 1991).  Plaintiff's bald claim of neglience, without more, is insufficient to infer liability on a warden for an employee's improper action.  *See Austin*, 195 F.3d at 728; *Anderson*, 477 U.S. at 256.

Similarly, Plaintiff further asserts that MCI-J Warden Rowley is liable for failing to act after Plaintiff informed him that he should not be on segregation due to Barthlow's improper, allegedly retaliatory, acts.  Plaintiff was housed at MCI-J fewer than three weeks, he was released from segregation three days after his acquittal on the adjustment charges,[10] and he returned to pre-release status less than one week later.  Clearly his claims concerning wrongful placement on segregation status were heard and fully adjudicated, and he was restored without apparent delay to his original security status.  Warden Rowley had no constitutional duty to speak directly to Plaintiff about his concerns and complaints or to supersede internal prison protocols to expedite Plaintiff's ability to benefit from his acquittal on adjustment charge.

Finally, he argues that Maryland Attorney General Curran and DOC Commissioner Sizer are

---

[10]     Apparently institutional records concerning the inmate hearing were destroyed because Plaintiff was found not guilty of the infractions.  Thus it is impossible to determine whether the infractions were dropped for procedural infirmity due to the lack of a shift commander's signature, or because the hearing officer did not find the language contained in Plaintiff's letter to Barthlow to be disrespectful and threatening.

liable because they failed to comply with *Massey v. Secretary, Department of Public Safety and Correctional Services*, 389 Md. 496, 886 A.2d 585 (2005), and *Bundy v. Cannon*, 538 F. Supp. 410 (D. Md. 1982), and a consent decree crafted in this Court in the 1970s or 1980s.[11]  In *Massey*, the Maryland Court of Appeals held that the Secretary of the Department of Public Safety and Correctional Services lacked the authority to adopt regulations that pertained solely to the routine internal management of DOC, and that such regulations instead required adoption in conformance with the state's Administrative Procedure Act.  While some DOC regulations may ultimately require re-promulgation in accordance with the Maryland Administrative Procedures Act, State Government Article Title 10, §§ 10-101 *et seq.*, neither the content nor the scope of the existing regulations has been struck down because they are per se impermissible or violate of the Fifth, Eighth or Fourteenth Amendments.  In *Bundy*, this Court held that revised adjustment procedures for dealing with adjustment violations of DOC rules fully complied with minimum due process requirements and adherence to such provisions would result in protection and safeguarding of prisoners' rights.  The undersigned cannot determine whether any of the revised adjustment procedures addressed in *Bundy* may require revisiting and reformulation in light of *Massey*.  It is apparent, however, that DOC adjustment proceedings in general have been determined to meet constitutional muster in this forum, despite having been promulgated without full compliance with the state's APA.  Plaintiff cannot successfully piggyback his concern that prison regulations have been promulgated in violation of the State's APA onto his claim concerning possible retaliation by DOC personnel due to his filing of ARP requests.  He received sufficient due process with regard to prison disciplinary proceedings and in fact was acquitted of the rules violations with which he had been charged.  Nothing more is

---

[11]    The Court takes judicial notice that all consent decrees governing conditions of confinement and prison administration entered into during the 1970s and 1980s have long since been terminated or have expired.

constitutionally required.

Accordingly, Plaintiff's Motion for Summary Judgment will be denied.  Defendants' Motion to Dismiss or, in the alternative, for Summary Judgment will be granted as to all Defendants.  A separate Order follows.


                                         _____/s/_____
Date: 12/11/06                               ROGER W. TITUS
                                         UNITED STATES DISTRICT JUDGE